# SUPREME COURT.

## THE PEOPLE agt. JEREMIAH McCARTHY.

## THE SAME agt. WILLIAM WARNER.

The act recently passed by the legislature of 1873, called "The habitual criminal act," is *not unconstitutional*, as violating that provision of article 1 of the constitution, which declares that "trial by jury in all cases in which it has heretofore been used, shall remain inviolate forever."

Nor does the act violate that provision of the constitution which declares that "no person shall be subject to be twice put in jeopardy for the same offense," but is valid so far as any constitutional objection is concerned.

Construction of the act, and the duty of officers to make arrests under it, stated.

The act contains the following clause : "And that he or she has, at some time, been convicted of any of the crimes herein named." In the case of the defendant Warner, there was an absence of any evidence that he had ever been convicted of any crime, as required by the act, and he was therefore discharged.

This act does not require a rehearing of the *case* by the court of review, but only of the *evidence*. The whole of the evidence and the proceedings may be brought up (as in this case) by *certiorari*, and the rehearing had upon the record.

*New York General Term, June,* 1873.

*Before* INGRAHAM, *P. J. ;* DAVIS *and* FANCHER, *JJ.*

THESE cases were brought up for review in this court by *certiorari* to the police justices' court.

· W. F. HOWE, *counsel for the defendants.*

Mr. PHELPS, *district attorney, for the people.*

People agt. McCarthy.

*By the Court,* DAVIS, *J.*—The first question raised is as to the constitutionality of the act. It is insisted that the act in question is in violation of that provision of article 1 of the constitution which declares that " trial by jury, in all cases in which it has heretofore been used, shall remain inviolate forever." A careful examination of the act will show that its sole object is to place certain definitely described persons, when found frequenting or attending certain designated places for unlawful purposes, in the class of " disorderly persons," and subject them to arrest, trial and imprisonment by proceedings analogous to those long used against such persons. Both in England and in this state, long prior to the earliest of our state constitutions, vagrants and disorderly persons, as defined by statute, were made subject to summary trials without jury, and frequently from time to time, in both countries, additions have been made by statute to the classes known as disorderly persons, with provisions subjecting them to arrest and trial in the same form. References to the ancient statutes of England on this subject may be found collected in Burris (Justice), under the title of " Vagrants," and the more modern laws are contained in British Statutes at Large, and in 2 Chitty's Statutes, 145, under the head of " Criminal-law vagrancy." Prior to 1788, the administration of this branch of criminal justice in the colony of New York was doubtless conducted under the English statutes. In February, 1778, the legislature, as may be found in 2 *Green Laws,* 52, while abrogating generally the statutes for apprehending and punishing " disorderly persons." (?) That act continued in force until the adoption of the Revised Statutes when it was enlarged by extension to include gamblers, ropedancers, common showmen, etc., and re-enacted, with some modifications not affecting the question now under consideration (1 *R. S.,* 638; *Edmonds' ed.,* 243, 591, §§ 1, 10). The late chancellor Walworth, in *Duffy* v. *The People* (6 *Hill,* 79), speaking of the extensions made by the Revised Statutes, says: " I have no doubt as to the constitutionality of the

law, although it extends to some offenses of the same nature and character which were not embraced in the act of February, 1788." By the 7th section of chapter 11 of the Laws of 1833, the legislature added one to the class of disorderly persons as defined by the existing statutes, and authorized a single magistrate to deal with him in a similar way as all others of his class had long been dealt with. The same ground of unconstitutionality was urged in a case arising under that act that is now presented. The supreme court held the act to be valid, and that the provisions of the constitution above referred to had no application to such cases (*Duffy* agt. *The People*, 6 *Hill*, 355). The court of errors, on the same case being brought before them, although they reversed the judgment below on another question, seem to have adopted the opinion of chancellor Walworth, in which he examined and affirmed the constitutionality of the act with great research and ability (*Duffy* agt. *The People*, 6 *Hill*, 75). The act now under consideration is a substantial transcript of the statute of Pennsylvania on the same subject, passed March 13, 1862, and of the several amendments subsequently enacted. That statute and its amendments may be found in Brightley's Pardon Digest, pp. 346, 347. It has been the subject of careful review in the supreme court of that state, in *Byers and Davis* agt. *The Commonwealth Reporter* (42 *Penn. St. R.*, 86, 6 *Wright*). The provisions of the constitution of Pennsylvania, in respect to trial by jury, are like our own. The court examined the question of the constitutionality of the law very fully, and upheld its validity in an able and conclusive opinion. There can be no question, in view of the statutes and authorities, that trial by jury had, before the constitution, never been used in the disposition of vagrants and disorderly persons, and consequently was not intended for such persons, so far as they were defined by then existing legislation. That the legislature have power to enlarge the class of persons to be affected by laws against disorderly persons, and to be summarily tried by the

magistrates of the state, seems to be well settled by the authorities above cited. I am of opinion, both upon principle and authority, that the act of 1873 is valid. The objection that it is void because in conflict with the provisions of the constitution that "no person shall be subject to be twice put in jeopardy for the same offense," is hardly worthy of serious consideration. It is not his previous offense which makes the "professional thief" a disorderly person under the law, but it is his act of attending at the places named for unlawful purposes, such as plying his vocation, that brings him within the prevention remedies of the new statute.

Having disposed of these questions, I am brought to those which affect the construction of the act and its application to the case in hand. The persons to whom the act applies are professional thieves, burglars, pickpockets, counterfeiters or forgers. A person within either of these descriptions may be arrested in either of two modes: First, by warrant issued by a police magistrate or justice of the peace, upon complaint on oath or affirmation, showing that he or she is a disorderly person within the act. Second, by any of the police authorities "at any steamboat landing, railroad depot, church, banking institution, broker's office, place of public amusement, auction room, store, auction sale in private residences, passenger car, hotel or restaurant, or at any other gathering of people, whether few or many," whenever known to the officer making the arrest to be within either of the described classes, and such officer has good reason to believe that such person is at the place where found for an unlawful purpose. In such case the officer is justified in making, and it is his duty to make, the arrest, and take the prisoner before a magistrate for the examination required by the statute. The case before me is, perhaps, a fair illustration of the power and the duty of the officer. Warner was found by officer Dusenbury on the platform of a street car, among several persons standing on the same platform. He was known to the officer to be a professional pickpocket, and was acting in

People agt. McCarthy.

a manner which led the officer to believe that he was on the car for the purpose of stealing from the passengers. These facts made it the duty of officer Dusenbury to arrest him under the act, and take him before the examining magistrate. His authority was properly exercised, and is not affected if it shall turn out, upon investigation, that the prisoner is not to be convicted by the magistrate. The act provides that when a person thus arrested is brought before the magistrate, " that if it shall be proven to the satisfaction of the magistrate or justice of the peace, by sufficient testimony, that he or she was frequenting or attending such place or places for an unlaw- ful purpose, and that he or she has at some time been con- victed of any of the crimes herein named, he or she shall be deemed a disorderly person, and upon conviction, after trial, shall be committed," &c. It will be seen that the magistrate, upon the trial, is to be satisfied by sufficient evidence that the party is within the description of persons named in the act, to wit, " a professional thief, burglar, pickpocket, counter- feiter or forger ;" that, if arrested by an officer at one of the places named in the act, he was frequenting or attending such place for an unlawful purpose, and that he has at some time been convicted of either larceny (petit or grand), burglary, picking a pocket, which is larceny from the person, without regard to the value taken, or counterfeiting or forgery (the latter being the legal name for the offense), and if so satisfied he may convict him of being a disorderly person, and com- mit him as provided by the act. This act contains one requirement not in the Pennsylvania statute. It is found in the words " and that he or she has at some time been con- victed of any of the crimes herein named." These words render our statute far less valuable and efficient than that of Pennsylvania. There is, of course, no reason why a well- known professional criminal, who is found at any of the places named, for the purpose of committing crime, should not be deemed a disorderly person, notwithstanding he may not have been actually convicted of crime, and it is to be

hoped that the legislature will amend the act to make it as valuable and effective as that of our sister state. But the provision is in the act in plain terms, and the courts cannot disregard it. It was evidently carelessly interjected, as it speaks of a conviction " of any of the crimes herein named," when in fact no crime is named in the act. This defect, however, is easily remedied by construction. The act is a remedial one for the prevention of crime, and the protection of society against the evil designs of persons attempting to commit offenses. It should therefore be rightly construed to effect the desired end, and not strictly to defeat it. Hence the phrase, " crimes herein named," should be held to mean such as make the party committing them, within the common sense of these terms, a thief or burglar, or pickpocket, or counterfeiter. But this construction cannot go so far as to eliminate from the statute the plain requirements of proof of a former conviction of some one of those crimes. In Warner's case, while there was abundant evidence that he was a professional thief, and was on the cars for the purpose of stealing, there was no proof that he had ever been convicted of any of the specified crimes. His conviction was, therefore, not justified by the evidence. The only other question relates to the form of proceeding before the judge or court who shall have issued the writ of *habeas corpus* under the second section. The question arises on the provision that " upon the return thereof " (that is, of the writ), " there shall be a rehearing of the evidence, and the judge or justice may either discharge, modify or confirm the commitment." It is claimed that it is my duty to retry the case upon evidence to be produced before me. But it will be observed the language is not that there shall be a " rehearing of the case," but a " rehearing of the evidence." By this I think that it was intended that the evidence before the committing magistrate shall be reconsidered and reviewed, and the judge or justice shall, upon such evidence, determine whether there should be a discharge or a modification, or a confirma-

People agt. McCarthy.

tion of the commitment. Any other view would require a complete new trial, with the production of witnesses, and their examination and cross-examination, and lead to the greatest embarrassments. The whole of the evidence and proceedings may be brought up, as has been done in this case, by *certiorari*, and where the record contains the evidence there is no occasion to rehear orally what is already before me in writing. I am strengthened in this view by the case of *Byers* agt. *The Commonwealth*, above cited. The second section of the Pennsylvania act is in the exact words of ours. The courts in that case held that it was the proper course to bring up the proceedings and evidence by *certiorari*, and the " rehearing of the evidence" was had upon the record. All the points and objections by the counsel for the prisoner are overruled, except that based upon the absence of any proof of previous conviction, as required by the act. On that ground alone the prisoner must be discharged.