(27 Misc. Rep. 16.)

### PEOPLE ex rel. SLOANE v. FALLON.

(Supreme Court, Special Term, New York County. March, 1899.)

HABITUAL CRIMINALS—DISORDERLY PERSONS—REPEAL OF STATUTES.

Laws 1873, c. 357, provided that if any person was charged with being a professional thief, pickpocket, etc., or was arrested at any depot, hotel, gathering of people, etc., and proved to be there for an unlawful purpose, and to have been convicted of any such crime, he should be deemed a disorderly person, and imprisoned not to exceed 100 days. The Code of Criminal Procedure and the Penal Code (Laws 1881, cc. 442, 676) were enacted to codify the existing criminal law. Pen. Code, § 690, makes a person convicted of a felony, who had been previously convicted of any crime, or a person convicted five times of a misdemeanor, an habitual criminal. Code Cr. Proc. §§ 510–514, make an habitual criminal liable to summary arrest, without warrant, and punishment as a disorderly person, when found in a place under circumstances justifying belief that he is intending to commit a crime, and make him and his premises liable at all times to search without warrant. Section 899, subd. 9, makes all habitual criminals disorderly persons, and section 903 provides for their imprisonment for six months. All the other persons described as disorderly persons under section 899 were similarly described in pre-existing statutes. *Held*, that Laws 1873, c. 357, was repealed and superseded by the Penal Code and the Code of Criminal Procedure.

Habeas corpus and certiorari by the people, on the relation of Edward E. Sloane, against John J. Fallon, warden, etc. Writ sustained.

James W. McLaughlin, for relator.

Asa Bird Gardiner, Dist. Atty. (Thomas F. Byrne, of counsel), for the people.

BEEKMAN, J. According to the record before me, the relator has been thrice convicted in this state of the commission of a crime,—on two occasions for grand larceny, and on one for burglary. On the 28th day of February, 1899, he was found in one of the hotels of the city of New York, not being a guest, under circumstances tending to show that he was there for an unlawful purpose. He was arrested and arraigned before a city magistrate upon a sworn complaint that he was a professional thief, pickpocket, and burglar, and

that he had been convicted of the offenses above referred to, and stating the circumstances under which he had been found in the hotel; and the charge was then made that he was a disorderly person, within the meaning of chapter 357 of the Laws of 1873. A trial was thereupon had before the magistrate, which resulted in the conviction of the relator of the offense so charged, and he was thereupon committed to the penitentiary for 100 days at hard labor.

It is contended in this proceeding that the magistrate had no jurisdiction to act upon the complaint, on the ground that chapter 357 of the Laws of 1873 was repealed and superseded by certain provisions of the Code of Criminal Procedure and the Penal Code. It therefore becomes necessary to consider both statutes, in so far as they bear upon the subject under consideration.

Chapter 357 of the Laws of 1873 provides that:

"If any person shall be charged on oath or affirmation before any police magistrate or justice of the peace in this state with being a professional thief, burglar, pickpocket, counterfeiter or forger, or shall have been arrested by the police authorities at any steamboat landing, railroad depot, church, banking institution, brokers' office, place of public amusement, auction room, store, auction sale in private residences, passenger car, hotel or restaurant, or at any other gathering of people, whether few or many, and if it shall be proven to the satisfaction of any such magistrate or justice of the peace, by sufficient testimony, that he or she was frequenting or attending such place or places for an unlawful purpose, and that he or she has at some time been convicted of any of the crimes herein named, he or she shall be deemed a disorderly person, and upon conviction after trial shall be committed by the said magistrate or justice of the peace to the penitentiary, in counties where there is a penitentiary, for a term not exceeding one hundred days, there to be kept at hard labor, and in counties where there is no penitentiary, or where no contract exists with any authorities of any penitentiary in the state, then to the county jail of said county, for a term not exceeding one hundred days, or, in the discretion of any such police magistrate or justice of the peace, he or she shall be required to enter security for his or her good behavior for a period not exceeding one year."

It will be observed that the essence of the offense cognizable under this act is that of being a disorderly person, and that, before the person so charged can be committed as such, it must appear: First, that he has been previously convicted of one of the crimes named in the act; second, such being his status, that he must have been arrested in one of the places specifically mentioned in the act, which he was frequenting or attending for an unlawful purpose. People v. McCarthy, 45 How. Prac. 97, where the constitutionality of the act was sustained by the general term of the supreme court, First department, and the act itself construed.

In 1881 the Code of Criminal Procedure and the Penal Code were enacted, which are respectively known as chapters 442 and 676 of the Laws of 1881. The object of these enactments was, substantially, to present a codification of the existing law with respect to penal offenses, and to blend "into one intelligent and consistent act all the various proceedings necessary in administering the criminal law." Fraser v. Board, 17 N. Y. St. Rep. 872, 875. It is true that they contain in some cases original subjects not covered by preexisting statutes, but it is plain, upon an examination of these acts, that it was the purpose of the legislature, so far as it was deemed prac-

ticable to do so, to set forth a compendium of the criminal law of this state, and to provide an intelligent and consistent system for its orderly administration. Under such circumstances, the rule of construction is applicable, that, where the subject-matter of previous legislation has been substantially covered by the Code, the former will be deemed to have been repealed or superseded by the latter. In re New York Institution for Instruction of Deaf and Dumb, 121 N. Y. 234, 24 N. E. 378. The rules laid down in the case above cited are correctly expressed in the portion of the official headnote which reads as follows:

"Where a revising statute covers the whole subject-matter of antecedent statutes, and such plainly appears to have been the legislative intent, it is to be deemed to contain the entire law upon the subject, and it virtually repeals the former enactments, although there is no express provision to that effect, and although provisions of the former acts are omitted in the revising statute. Where two statutes relate to the same subject-matter, though not in terms repugnant and inconsistent, if the latter is intended to prescribe the only rule which shall govern, it repeals the earlier."

Bearing in mind these principles, the question for determination is whether the provisions which are contained in the two Codes with respect to habitual criminals were intended by the legislature to be a substitute for the act of 1873; for, if such was the case, it is plain that the latter was repealed, and ceased to be operative, when the Codes took effect.

Section 690 of the Penal Code provides that:

"Where a person is hereafter convicted of a felony, who has been, before that conviction, convicted in this state, of any other crime, or where a person is hereafter convicted of a misdemeanor who has been already five times convicted in this state of a misdemeanor, he may be adjudged by the court, in addition to any other punishment inflicted upon him to be an habitual criminal."

By section 691 of the same act it is declared that:

"The person of an habitual criminal shall be at all times subject to the supervision of every judicial magistrate of the county, and of the supervisors and overseers of the poor of the town where the criminal may be found, to the same extent that a minor is subject to the control of his parent or guardian."

The subject, however, receives a very much larger and more satisfactory treatment in Code Cr. Proc. §§ 510–514, both inclusive. Section 510 contains provisions expressed in almost the same words as are those of section 690 of the Penal Code, above quoted. Section 512 provides that:

"A person who has been adjudged an habitual criminal is liable to arrest summarily with or without warrant, and to punishment as a disorderly person, when he is found without being able to account therefor, to the satisfaction of the court or magistrate, either, (1) in possession of any deadly or dangerous weapon, or of any tool, instrument or material, adapted to, or used by criminals for, the commission of a crime; or (2) in any place or situation under circumstances giving reasonable ground to believe that he is intending or waiting the opportunity to commit some crime."

Section 514 prescribes that:

"The person and the premises of everyone who has been convicted and adjudged an habitual criminal shall be liable at all times to search and exam-

ination by any magistrate, sheriff, constable, or other officer, with or without warrant."

Turning now to section 899 of the Code of Criminal Procedure, we find that the legislature has undertaken to define who are disorderly persons, under nine separate and distinct specifications. The ninth subdivision reads, "(9) Habitual criminals within the provisions of this Code." Subsequent sections provide for the arrest and arraignment of disorderly persons, and the powers of magistrates in dealing with and disposing of such cases. A police justice of a city, among other magistrates, can entertain such a charge. Section 900. If the magistrate be satisfied, either by the confession of the defendant, or by competent testimony, that he is a disorderly person, he may require the person so charged to give security that he will be of good behavior for the space of one year, or that the sureties will pay the sum mentioned in the undertaking, which must be fixed by the magistrate. Section 901. If the undertaking be given, the defendant must be discharged, but if not, the magistrate must convict him as a disorderly person (section 902), and, by a warrant signed by him, must commit him, where the complaint is made in the city of New York, to the city prison or penitentiary of that city "for not exceeding six months at hard labor, or until he gives the security prescribed in section nine hundred and one." Section 903.

Referring again to section 899, and leaving out of consideration for the moment the case of habitual criminals, it will be found that all of the other classes of persons there enumerated were similarly described as disorderly persons in pre-existing statutes (2 Rev. St. [Bank's 6th Ed.] 893),—a circumstance which is very significant of an intention on the part of the legislature to bring under one comprehensive classification all of those who had been previously designated as "disorderly persons," and, in a general way, all who should be thereafter dealt with as such; and it is therefore natural to infer that where a former statute is found dealing with habitual criminals, although not under that precise title, and declaring them, under certain conditions, to be "disorderly persons," the legislature intended to cover the ground of such statute when, under the new enactment, it declared habitual criminals to be disorderly persons under substantially similar conditions. Under the act of 1873, the persons there referred to are characterized as "professional" thieves, burglars, pickpockets, counterfeiters, or forgers, which necessarily implies that the commission of such crimes is habitual, and that those who so commit them are habitual criminals. It will also be observed that the conditions which determine whether any such person is a disorderly person, under the act of 1873, are that he must have been previously convicted of one of the offenses named in the act, and that he must have been arrested under circumstances sufficient to warrant the conclusion that he was attending one of the places specifically enumerated therein for an unlawful purpose. A comparison of these provisions with those which are contained in the Code of Criminal Procedure will show that these same elements must also concur in order to support a prosecution thereunder of an habitual criminal as a disorderly person,—with these differences, however: (1) That under the

Code the defendant in such a case must have been adjudged to be an·
habitual criminal by the court which tried the indictment for which
he was originally convicted; (2) that, in addition to his being "in any
place or situation under circumstances giving reasonable ground to
believe that he is intending or waiting the opportunity to commit some·
crime," he also becomes subject to the provisions of the Code if he is·
found "in possession of any deadly or dangerous weapon, or of any·
tool, instrument or material, adapted to, or used by criminals for, the·
commission of crime." It is beyond all reason to suppose that the·
legislature did not have in mind the provisions of the act of 1873 at
the time when the code provisions upon this subject were enacted.·
The marked similarity between the two statutes forbids any such con-·.
clusion. The new provision, that, to be an habitual criminal, the con-
victed person must have been so adjudged by the court in which·
such conviction was had, was undoubtedly intended to meet what¯
seems to me to have been an obvious defect of the act of 1873. As·
that act was framed, a magistrate could adjudge a person to be a pro-
fessional thief upon the production of the record of a single convic-
tion for larceny. That much injustice might result from this is plain,
when we consider the fact that individual crimes are sometimes com-
mitted under peculiar circumstances of overwhelming temptation, so
that the mere fact of conviction would not properly be indicative of a
general disposition to commit crime,—much less, of a purpose to
make it a means of livelihood. The one person of all others who
is in a position to determine such a question is the judge who pre-
sided at the trial of the indictment, who heard all the evidence,
saw the prisoner, and was fully possessed of all the surrounding
facts and circumstances. This additional provision is, in my opin-
ion, a wholesome one, and might well have been included origi-
nally in the act of 1873. Other differences between the two stat-
utes may be noted. The act of 1873 is confined to persons who·
have been convicted of stealing, burglary, picking pockets, coun-
terfeiting, or forging. The Code contains no such limitation; re-
quiring only that the trial court must have adjudged the offender¯
to be "an habitual criminal," regardless of the nature of the crime·
for which he had been convicted. But these differences are, in a.,
sense, subordinate to the main object of both statutes, namely, to·
protect the community against a class of persons habituated to·
the commission of crime, and involve details evidently intended to
improve the original legislation upon the subject with respect to
both public and private interests. It will be observed that the
power of the magistrate entertaining the proceeding is much the
same under both statutes. Under the act of 1873 he is authorized,
upon conviction of the defendant as a disorderly person, to com-
mit him to jail for a term not exceeding 100 days, or, in his dis-
cretion, to require the person to enter security for his or her good
behavior for a period not exceeding 1 year. The only difference
between the two is that in one case the period of imprisonment is
100 days, and in the other, 6 months,—a difference that naturally
arises out of a disposition that there should be uniformity in deal-
ing with all classes of disorderly persons. If the two acts are to·

be regarded as co-existent; the result would be contradictory and inharmonious in the extreme. The same person, if he has been adjudged "an habitual criminal," might be subject to prosecution under either one of the two acts. Furthermore, two persons associated together at the same place, under circumstances giving reasonable ground to believe that they were intending or waiting the opportunity to commit the same crime, might be subject to prosecution,—one under the act of 1873, because, while he had been convicted of an offense named in that act, he had not been adjudged an habitual criminal, while the other, who had been adjudged an habitual criminal, would also be subject to prosecution under the provisions of the Code of Criminal Procedure. The former would be subject to imprisonment for 100 days; the other, to imprisonment for the period of 6 months,—each being equally guilty, so far as the foundation for the charge was concerned, and the offense in each case being identical. I confess myself unable, on any assumption of intelligent action by the legislature, to reconcile the co-existence of these two statutory provisions. There is no doubt in my mind that the legislature, in enacting the Code of Criminal Procedure, intended to deal with the subject-matter of the act of 1873, and to revise and improve it, and that when it placed habitual criminals within the class of disorderly persons, as defined in the Code of Criminal Procedure, it referred to the class of criminals who were intended to be dealt with under the act of 1873, and gathered them in, together with others who had been previously characterized in various statutes as disorderly persons, under a comprehensive scheme for a more scientific and convenient restatement of the law concerning such persons and their treatment,—a conclusion which is re-enforced by the fact that in no other part of the Code can any provision be found which bears upon the subject. I am therefore of the opinion, as I have already stated, that chapter 357 of the Laws of 1873 was, in effect, repealed by the provisions of the Code of Criminal Procedure to which I have referred, and that inasmuch as it nowhere appears that the relator was an habitual criminal, within the code definition, the commitment was void. The writ must therefore be sustained, and the relator discharged.

Writ sustained, and relator discharged.