The People of the State of New York ex rel. Rosie Frank, Respondent, v. Katherine Bement Davis, Superintendent of the State Reformatory for Women at Bedford, New York, and Leroy B. Crane, City Magistrate, Appellants.

The People of the State of New York ex rel. May Clark, Respondent, v. The Keeper of the New York State Reformatory for Women at Bedford, New York, and Leroy B. Crane, City Magistrate, Appellants.

The People of the State of New York ex rel. Mamie Smith, Respondent, v. The Keeper of the State Reformatory for Women at Bedford, New York, and Joseph Pool, City Magistrate, Appellants.

*Crime — disorderly conduct under section 1458, New York city Consolidation Act — common prostitute — a minor offense — a prostitute may be summarily convicted by a city magistrate of New York and punished as prescribed in section 707 of the New York city revised charter — she may not be sentenced as prescribed by the State Charities Law.*

Section 1458 of the Consolidation Act (Laws of 1882, chap. 410) which provides, "Every person in said city and county shall be deemed guilty of disorderly conduct that tends to a breach of the peace, who shall in any thoroughfare or public place in said city and county commit any of the following offenses, that is to say: * * * (2) Every common prostitute or nightwalker loitering or being in any thoroughfare or public place for the purpose of prostitution or solicitation, to the annoyance of the inhabitants or passers-by," is still in force in the present city of New York.

The offenses mentioned in the 2d subdivision of section 1458 of the Consolidation Act are not misdemeanors under the common law, but are minor offenses cognizable by the city magistrates who may summarily convict the offenders.

A female, between the ages of fifteen and thirty, convicted by a police magistrate of the offense of disorderly conduct as defined in subdivision 2 of section 1458 of the Consolidation Act, may, under the provisions of section 707 of the revised charter of the city of New York (Laws of 1901, chap. 466), be fined ten dollars, confined in a workhouse or penitentiary for six months or be compelled to give a bond for good behavior. She cannot, however, be so committed under section 146 of the State Charities Law (Laws of 1896, chap. 546, as amd. by Laws of 1899, chap. 632), which provides, "A female, between the ages of fifteen and thirty years, convicted by any magistrate of petit larceny, habitual drunkenness, of being a common prostitute, of frequenting disorderly houses or houses of prostitution, or of a misdemeanor, * * * may be sentenced and committed " to certain institutions for a period of three years or until discharged by the board of managers of such institutions, as that section does not relate

to disorderly conduct as defined in section 1458 of the Consolidation Act, but to matters which are either misdemeanors or special proceedings of a criminal nature fully provided for by the Penal Code and by the Code of Criminal Procedure.

APPEAL by Katherine Bement Davis, superintendent of the State Reformatory for Women at Bedford, New York, and others, the defendants in the three above-entitled actions, from an order of the Supreme Court, made in each of the above-entitled actions at the Kings County Special Term and entered in the office of the clerk of the county of Kings, in the case of Clark, on the 14th day of June, 1902, in the case of Smith, on the 18th day of June, 1902, and in the case of Frank, on the 11th day of September, 1902, sustaining writs of habeas corpus and certiorari theretofore allowed in behalf of the relator in each action, and discharging her from the New York State Reformatory for Women at Bedford, New York.

*First.* The relator, Rosie Frank, was originally arrested and brought before a city magistrate in the county of New York upon December 28, 1901.

She was thereupon charged with " disorderly conduct in that she did on the 27th day of December, 1901, solicited * men for the purpose of prostitution, committed at East 97th street, on the 27th day of December, 1901."

This charge was made under the provisions of subdivision 2 of section 1458 of the New York City Consolidation Act (Laws of 1882, chap. 410). The relator was summarily tried and convicted by the said magistrate, and was thereupon committed to the New York State Reformatory for Women, at Beford, N. Y. The commitment was made pursuant to the provisions of section 146 of the State Charities Law (Laws of 1896, chap. 546, § 146, as amd. by Laws of 1899, chap. 632).

Subsequently her discharge was sought upon habeas corpus proceedings. The order of discharge was made at Special Term in the county of Kings on the 6th day of June, 1902, and was entered in the clerk's office of the county of Kings on the 11th day of September, 1902.

---

* *Sic.*

The reasons for the discharge of the relator were fully set out by Mr. Justice GAYNOR in the opinion below. (For this opinion, see 38 Misc. Rep. 233).

*Second.* The relator, May Clark, was originally arrested and brought before a city magistrate in the county of New York upon May 31, 1902.

She was thereupon charged with " being a public prostitute, committed at said city, upon the Bowery, at the hour of 9:35 P. M. o'clock on the 30th day of May, 1902."

This charge was made under the provisions of section 146 of the State Charities Law (Laws of 1896, chap. 546, § 146, as amd. by Laws of 1899, chap. 632), which provides that " A female between the ages of fifteen and thirty years, convicted by any magistrate * * * of being a common prostitute * * * may be sentenced and committed to the House of Refuge for Women at Hudson, or to the Western House of Refuge for Women at Albion, or the New York State Reformatory for Women at Bedford."

The relator was summarily tried and convicted by the said magistrate, and was thereupon committed to the New York State Reformatory for Women at Bedford, N. Y. The commitment was made pursuant to the provisions of section 146 of the State Charities Law as quoted above.

Subsequently her discharge was sought upon habeas corpus proceedings. The order of discharge was made at Special Term in the county of Kings on the 14th day of June, 1902, and was entered in the clerk's office of the county of Kings upon the 14th day of June, 1902.

The reasons for the discharge of the relator were fully set out by Mr. Justice GAYNOR in the opinion below (For this opinion see 38 Misc. Rep. 241.)

*Third.* The relator, Mamie Smith, was originally arrested and brought before a city magistrate in the county of New York upon May 6, 1902.

She was thereupon charged with " disorderly conduct and being a prostitute and soliciting men for the purpose of prostitution in the public street, committed at New York City aforesaid, the 6th day of May, 1902."

The relator was thereupon summarily tried and convicted " of

being guilty of such disorderly conduct charged in said complaint, and as in my opinion tended to and might provoke a breach of the public peace."

This charge of " disorderly conduct " was made under the provisions of subdivision 2 of section 1458 of the New York City Consolidation Act (Laws of 1882, chap. 410). The relator was thereupon committed to the New York State Reformatory for Women at Bedford, N. Y. The commitment was made pursuant to the provisions of section 146 of the State Charities Law, above quoted.

Subsequently, her discharge was sought upon habeas corpus proceedings. The order of discharge was made at Special Term in the county of Kings, and as stated in the caption of the order on the 21st day of June, 1902, and was said in the notice of appeal to have been entered in the clerk's office of the county of Kings on the 18th day of June, 1902.

The reasons for the discharge of the relator were fully set out by Mr. Justice GAYNOR in the opinion below. (For this opinion see 38 Misc. Rep. 243.)

*Joseph M. Deuel, Robert C. Taylor* and *Henry G. Gray,* for the appellants.

*Amos H. Evans,* for the respondents.

WOODWARD, J. :

The relator Frank was confined in the State Reformatory for Women at Bedford under and by virtue of a warrant of commitment signed by one of the city magistrates. The return to the writ of habeas corpus shows that an information in writing, under oath, had been laid before the magistrate charging the relator, Rosie Frank, a female between the ages of fifteen and thirty years, with " disorderly conduct in that she did on the 27th day of December, 1901, solicited * men for the purpose of prostitution, committed at East 97th street, on the 27th day of December, 1901," and the practical question presented on this appeal is whether a city magistrate has jurisdiction to convict a female between the ages of fifteen and thirty years of the offense with which she was charged, and to

---

* *Sic.*

commit her to the State Reformatory for Women at Bedford for the term of three years. Two inquiries are suggested : *First*, is there such an offense as disorderly conduct, and, *second*, if there is, has a city magistrate power to summarily convict for this offense and to commit the person to the said State reformatory ?

The appellants concede that there is no such offense as disorderly conduct defined in the Greater New York charter, but contend, and we think with reason, that section 1458 of the Consolidation Act (Laws of 1882, chap. 410) is still in force, and it is urged that the conviction may be justified under subdivision 2 of that section. The provision of law referred to reads as follows : " Every person in said city and county shall be deemed guilty of disorderly conduct that tends to a breach of the peace, who shall in any thoroughfare or public place in said city and county commit any of the following offenses, that is to say : * * * (2) Every common prostitute or nightwalker loitering or being in any thoroughfare or public place for the purpose of prostitution or solicitation, to the annoyance of the inhabitants or passers-by." By section 1461 of the same act it is provided : " In all complaints before any magistrate in the city of New York for disorderly conduct it shall be lawful for such magistrate, if in his opinion such disorderly conduct tends to a breach of the peace, to require the party against whom such conduct may be proved, either by his or her own confession, or by competent testimony, to give sufficient surety or sureties for his or her good behavior, for any term not exceeding twelve months, and the magistrate who may have required such surety or sureties may, in his discretion, at any time discharge the same." And by section 1562 of the same act it is provided : " In all cases of arrest for intoxication or disorderly conduct in the city of New York the police justices shall have power, in addition to holding the party to bail for good behavior, to impose a fine not exceeding ten dollars in each case, or to commit to the city prison not exceeding ten days, each day of imprisonment to be taken as a liquidation of one dollar of the fine." This provision seems to have been embodied in the involved provisions of section 707 of the Greater New York charter (Laws of 1897, chap. 378) as amended by chapter 466 of the Laws of 1901, but there is no further definition of disorderly conduct than that to be found in section 1458 of the Consolidation Act, which refers

to "disorderly conduct that tends to a breach of the peace," and the police justices appear to have had jurisdiction to compel the giving of peace bonds and the imposing of fines not exceeding ten dollars on conviction, upon the confession of the party or by competent testimony. (Consol. Act, §§ 1461, 1562.) Confined to the strict letter of the statute, under the three subdivisions of section 1458 of the Consolidation Act, it may be that the offenses do not reach the dignity of misdemeanors under the common law, and may be properly within the jurisdiction of police magistrates, without those safeguards to personal rights guaranteed by the Constitution. The acts specified, particularly in the 1st and 2d subdivisions, are not such as would, under ordinary circumstances, necessarily result in a breach of the peace; are not such as would bring the parties within the rule of the common law, and it was, no doubt, competent for the Legislature to define such a minor offense and to give jurisdiction over it to the police magistrates, with the power of summary conviction.

In the cases now before us, however, there is an attempt to enlarge this jurisdiction; it is contended that a police magistrate, without even so much as reducing the evidence to writing, so that an appellate court may determine whether or not the conviction was made upon "competent testimony," may not only summarily convict the relators, but may condemn them to a loss of their liberty, through confinement in a reformatory institution, for a period of three years. It is no longer the petty offense, but a crime punishable by confinement for three years, that we are asked to sanction by a reversal of the orders appealed from. We are asked to say, in effect, that in a jurisdiction which guarantees to the citizen that he shall not be deprived of life, liberty or property without due process of law; that he shall not be deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers; that he shall have a trial by jury, etc., the citizen may be arrested, taken before a single police magistrate, and upon such evidence as may serve to convince him that the relator has been guilty of disorderly conduct, be condemned to a reformatory and deprived of her liberty for a period of three years. The provisions of law should be very clear and unmistakable to warrant any such holding on the part of this court, and an examina-

tion of the authorities called to our attention by the learned counsel does not lead us in that direction. There is not a line of evidence returned, either to the writ of habeas corpus or to the writ of certiorari, upon which the conviction of the relator Frank is based; there is no allegation bringing her within the provisions of subdivision 2 of section 1458 of the Consolidation Act, except the affidavit of the policeman who arrested her, and the commitment avers that she was charged with "disorderly conduct, in that she did on the 27th day of December, 1901, solicited* men for the purpose of prostitution," and that she was duly tried and convicted of the said charge. In the case of *People* v. *Hines* (57 App. Div. 419, 421) it was said: "It cannot be that the Legislature intended that a magistrate should be invested with power to deprive a citizen of his liberty without keeping any record of the evidence upon which the judgment is based. If one can be deprived of his liberty in this way, then it does not require a vivid imagination to see how insecure personal liberty is. But this is not the law, and public policy forbids that it should be. When one is deprived either of his property or his liberty, the court depriving him of it must have record evidence justifying the action taken, which can be produced when called for, in order that a review may be had by an appellate tribunal." And in the recent case of *People ex rel. Allen* v. *Hagan* (170 N. Y. 46, 52), in discussing the powers of a commiting magistrate, the court say: "It is not necessary that the offense should be specified with the precision required in an indictment, but in order to confer authority to imprison the accused, or to detain him in prison, it must show that he is charged with some crime known to the law by some legal or statutory definition, or that he is charged with some act or omission specified which in law amounts to a crime." Disorderly conduct, in the abstract, does not constitute any crime known to the law; it is only when it "tends to a breach of the peace" under the circumstances detailed in section 1458 of the Consolidation Act, that it constitutes a minor offense cognizable by the police magistrates of the city of New York, and when it in fact threatens to disturb the peace it is a misdemeanor as well under section 675 of the Penal Code as at common law, and not within the jurisdiction of the police magistrates, but of the Court of

---

* *Sic.*

Special Sessions. (Laws of 1895, chap. 601, § 14; Laws of 1901, chap. 466, § 1409.) The relator Frank is alleged to have been duly convicted of disorderly conduct, an offense unknown to the law, except as defined by section 1458 of the Consolidation Act, and under the provisions of section 707 of chapter 466 of the Laws of 1901, she might be fined ten dollars, confined in a workhouse or penitentiary for six months, or be compelled to give a bond for good behavior. But through "that love of power and proneness to abuse it which predominates in the human heart," to quote the language of Washington in his Farewell Address, the city magistrates have attempted to enlarge their jurisdiction, and have committed the relator Frank for a period of three years, upon a summary conviction for that which is at most but a petty offense. This is so clearly a depriving of one of liberty, and is so manifestly beyond the legitimate scope of a police magistrate, disposing of cases with little or none of the formalities of a trial, that the law which permits this ought to be too clear for any reasonable dispute in order to warrant such a commitment and detention.

Is the law under which this commitment purports to have been made thus clear and unmistakable? The statute under which the commitment was made is chapter 632 of the Laws of 1899, being an amendment of section 146 of chapter 546 of the Laws of 1896, entitled " An act relating to state charities, constituting chapter twenty-six of the general laws," relating to commitments to houses of refuge and reformatories for women. The amended act (§ 146) provides: " A female, between the ages of fifteen and thirty years, convicted by any magistrate of petit larceny, habitual drunkenness, of being a common prostitute, of frequenting disorderly houses or houses of prostitution, or of a misdemeanor, and who is not insane, nor mentally or physically incapable of being substantially benefited by the discipline of either of such institutions, may be sentenced and committed to * * * the New York State Reformatory for Women, at Bedford," the term of such commitment being for a period of three years or until discharged by the board of managers. It will be noticed that this act does not mention disorderly conduct, nor does it attempt to give jurisdiction of any offense; it merely provides that, when any female between the stated ages has been convicted of any of the specific acts or conditions mentioned, she

may, under certain circumstances, be committed to the reformatories mentioned. Petit larceny is a misdemeanor. (Penal Code, § 535.) Drunkards are defined as disorderly persons by section 899 of the Criminal Code; an habitual drunkard, who abandons, neglects or refuses to aid in the support of his family, or a person who has contracted an infectious or other disease in the practice of drunkenness or debauchery, requiring charitable aid to restore him to health, is classed and defined as a vagrant by section 887 of the Criminal Code, and habitual drunkards are recognized and provision is made for the determination of the fact by a jury trial in Revised Statutes, part 1, chapter 20, title 4. (1 R. S. 636, 637.) A common prostitute, who has no lawful employment whereby to maintain herself, is a vagrant under section 887 of the Criminal Code. Frequenting disorderly houses or houses of prostitution by children actually or apparently under sixteen years of age is provided for by section 291 of the Penal Code, and misdemeanors, as we have already pointed out, are cognizable only by Courts of Special Sessions in the city of New York. It will thus be seen that all of the cases mentioned in the statute under which this commitment was issued are provided for under the Criminal or Penal Code or the Revised Statutes, and are not within that class of petit offenses which are summarily disposed of by city magistrates, unless it be in those matters which are involved in vagrancy and what are known as disorderly persons. None of them, however, relates to disorderly conduct as defined in section 1458 of the Consolidation Act, and they are of a wholly different character. "Disorderly conduct that tends to a breach of the peace" is below the grade of a misdemeanor, while petit larceny, and the other matters mentioned in chapter 632 of the Laws of 1899, are either misdemeanors or they are special proceedings of a criminal nature, fully provided for by the Criminal Code and Penal Code, and we cannot believe that the Legislature, which has expressed no such intention, contemplated that persons convicted of offenses with a limited punishment attached, not amounting to misdemeanors, should, at the discretion of a single city magistrate, be deprived of their liberty for a period of three years. This would be to deprive the relators of the right or privilege accorded to every citizen of this State to be secure in his life, liberty and property unless by the law of the land or the judgment of his peers

(State Const. art. 1, § 1), and we are persuaded that the full measure of power proper to be intrusted to a single individual is measured by the letter of the statute, which limits and defines the punishment for disorderly conduct as defined above. "With us," say the court in *People ex rel. Tweed* v. *Liscomb* (60 N. Y. 559, 591), "all punishments are prescribed by statute as well as to character as extent, and a sentence not conformable to law as not warranted by statute, or which is in excess of the legal punishment, is *ultra vires,* and like every other act, whether judicial or ministerial, done without legal authority, is void. * * * But courts can only administer the laws as they find them, and it is far better that the most guilty should escape, than that the law should be judicially disregarded or violated. A greater public wrong would be committed, one more lasting in its injurious effects, and dangerous to civil liberty and the sacredness of the law, by punishing a man against and without law, but under color of law and a judicial proceeding, than can result from the escape of the greatest offender, or the commission of the highest individual crimes against law."

The facts involved in *People ex rel. Clark* v. *State Reformatory* and *People ex rel. Smith* v. *State Reformatory* are so nearly the same that it does not appear to be necessary to go into a separate discussion of the merits of either of them. They are all open to the same general objections; they attempt to justify the depriving of the relators of their liberty by convictions for offenses which have no existence in law, and to administer punishments beyond the jurisdiction of the court. The trials and commitments do not conform to the letter of the law, and being of a criminal nature, there is no warrant for an enlarged construction to meet these particular cases. The whole spirit and tendency of our laws are against depriving citizens of their liberty without the formalities and the safeguards recognized as due process of law, or the orderly application of the law of the land, and while it may be proper to permit city magistrates to summarily convict and punish minor offenses, not amounting to misdemeanors, or in cases of a charitable or corrective nature for persons of immature years, it can hardly be necessary to vest the power to deprive the citizen of his or her liberty for a period of three years in a city magistrate, where the

statute defining the offense limits the power of punishment to a petty fine of ten dollars, and the giving of a bond for good behavior.

The several orders appealed from should be affirmed.

GOODRICH, P. J., and HOOKER, J., concurred; HIRSCHBERG and JENKS, JJ., concurred in result.

Orders affirmed.