PEOPLE ex rel. ST. CLAIR v. DAVIS.

(Supreme Court, Appellate Division, Second Department.   March 3, 1911.)

1. HABEAS CORPUS (§§ 27, 30*)—REVIEW.
    On habeas corpus, on the ground that under no circumstances was commitment to a reformatory authorized, an erroneous exercise of the power cannot be reviewed, but, if such confinement could in no case be justified, relator is entitled to relief by habeas corpus.
    [Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 22–25; Dec. Dig. §§ 27, 30.*]

2. CRIMINAL LAW (§ 88*)—JURISDICTION—CITY MAGISTRATES—"DISORDERLY CONDUCT."
    The magistrates of the city of New York have jurisdiction to try persons charged with disorderly conduct tending to a breach of the peace, as defined in New York Consolidation Act (Laws 1882, c. 410) § 1458, one of which offenses is soliciting within a thoroughfare or public place.
    [Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 88.*
    For other definitions, see Words and Phrases, vol. 3, pp. 2107, 2108.]

3. PROSTITUTION (§ 6*)—SENTENCE—REFORMATORY PUNISHMENT.
    Under Greater New York Charter (Laws 1901, c. 466, as added by Laws 1905, c. 610) § 707a, a magistrate of the city of New York, who has convicted a woman between the ages of 16 and 30 years of soliciting, in violation of New York Consolidation Act (Laws 1882, c. 410) § 1458, subd. 2, can sentence her to the Bedford Reformatory under the provisions of the state charities act (Laws 1896, c. 546).
    [Ed. Note.—For other cases, see Prostitution, Dec. Dig. § 6.*]

4. CRIMINAL LAW (§ 999*)—COMMITMENT—APPEAL—RECORD.
    Where the warrant of commitment recites that the relator had been brought before a magistrate charged with soliciting "on the Bowery, at

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the hour of 11 p. m. said date," and that she was tried and convicted, it sufficiently shows that she was convicted of the offense prohibited by New York Consolidation Act (Laws 1882, c. 410) § 1458.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 999.*]

5. JURY (§ 21*)—RIGHT TO JURY TRIAL—CONSTITUTIONAL LAW.

Laws 1905, c. 610, providing as punishment for soliciting commitment to the State Reformatory for Women, is not unconstitutional as violating article 1, § 6, in that it does not provide for a common-law trial by jury.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 134–142; Dec. Dig. § 21.*]

6. CRIMINAL LAW (§ 1206*)—REFORMATORY TREATMENT—CONSTITUTIONAL LAW —POLICE POWER.

Laws 1905, c. 610, providing for reformatory treatment of disorderlies, is a valid exercise of the police power, its object not being wholly penal, but reformation, and is constitutional.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3271–3280; Dec. Dig. § 1206.*]

Appeal from Special Term, Kings County.

Application by the People, on the relation of Lilly St. Clair, for writ of habeas corpus to Katharine Bement Davis, Superintendent of the New York State Reformatory for Women. From an order of the Supreme Court dismissing the writ (122 N. Y. Supp. 788), relator appeals. Affirmed.

See, also, 133 App. Div. 944, 118 N. Y. Supp. 1135.

The complaint or affidavit of Officer T., upon which the relator was arraigned, stated that she was a "common prostitute and nightwalker, and that she was on the night of the 20th day of March, 1909, loitering in the Bowery, that being a public thoroughfare and public place, soliciting and importuning men passing in and along said thoroughfare or place for the purpose of prostitution, to the great annoyance of the people, etc., in violation of the statute in such case made and provided, and did then and there stop and solicit two men for such purpose at the hour of 11 o'clock p. m." This complaint was indorsed "Affidavit—Disorderly Conduct (Soliciting)." The relator's formal statement recited that she had been duly examined "according to law, on the annexed charge," etc. The minutes of the proceedings before the magistrate, after reciting the above complaint, stated that the magistrate informed the defendant that she was "charged with disorderly conduct, loitering in the public streets, and soliciting men for the purpose of prostitution," and that she was found guilty and committed to the Bedford Reformatory. The affidavit of error upon the ensuing appeal to the Court of General Sessions recited that the relator had been "arrested and charged with the crime of disorderly conduct," and arraigned, tried, convicted, and sentenced to the Bedford Reformatory. The magistrate's return upon that appeal recited that the relator had been brought before him "charged upon complaint of T., with disorderly conduct, which complaint is hereto annexed and made a part of this return," and further recited that she had been thereupon tried, and that the magistrate "did thereupon convict her of being guilty of such disorderly conduct charged in said complaint, and as in my opinion tended to and might provoke a breach of the public peace," and that he thereupon committed her to the Bedford Reformatory, etc. The extract from the minutes of the Court of General Sessions, showing the affirmance of the magistrate's judgment, recited that the appeal was "from a judgment of conviction for disorderly conduct." The warrant of commitment annexed to the return in these habeas corpus proceedings recited that the relator had been brought before the magistrate "charged upon the oath of T. with having been on the 20th day of March, 1909, in said city and county a common prostitute and did solicit men for the purpose of prostitution on the Bowery

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

at the hour of 11 p. m. said date"; that the charge was distinctly read; that she pleaded not guilty; that she was duly tried; and that the magistrate "did convict and adjudge the said Lilly St. Clair to be guilty of the charge thus made against her."

Argued before JENKS, P. J., and HIRSCHBERG, BURR, RICH, and THOMAS, JJ.

Philip Wohlstetter, for appellant.

Robert C. Taylor, Asst. Dist. Atty., for respondent.

BURR, J. The relator was arrested and brought before a magistrate of the city of New York, charged with "disorderly conduct—soliciting." The information was that, being a common prostitute, she was on the night of March 20, 1909, loitering on the Bowery, which is a public thoroughfare, soliciting and importuning men passing in and along said thoroughfare for the purpose of prostitution, to the great annoyance of the people of the state of New York residing in the neighborhood and passing thereby. After a plea of not guilty, evidence was introduced before the magistrate. She was convicted and committed to the State Reformatory for Women at Bedford, to be there confined for a term not to exceed three years, unless sooner paroled or discharged therefrom, pursuant to the provisions of section 146 of the state charities law (Laws 1896, c. 546). An appeal from the judgment of conviction was allowed to the Court of General Sessions of the Peace, and from its judgment of affirmance an appeal was taken to the Appellate Division of our Supreme Court, sitting in the First Department, where the judgment was again affirmed (133 App. Div. 944, 118 N. Y. Supp. 1135). Relator then sued out a writ of habeas corpus, and from an order dismissing the writ and remanding her to custody this appeal is taken.

Three grounds of reversal have been urged upon our attention: First, that the offense with which the relator is charged is not set forth with definite certainty; second, that the magistrate exceeded his jurisdiction in sentencing her to the Bedford Reformatory; and, third, that the statute under which he assumed to exercise such power is unconstitutional.

At the threshold of the case, we are met by a contention on the part of the district attorney that the precise questions here presented were involved in the appeal taken to the Appellate Division of the First Department, and that that decision is final until reversed upon appeal. That these questions were argued before that court is not disputed. The appellant contends that some at least of said alleged grounds of error were not set forth in the affidavit upon which the appeal was allowed, and that, therefore, the appellate court was precluded from considering them (Code Cr. Proc. § 751; People v. Jewett, 69 Hun, 550, 23 N. Y. Supp. 942; People v. Giles, 152 N. Y. 136, 46 N. E. 326. The first one certainly was, and we need give it no further consideration. As to the others, it is not so clear. But the district attorney contends that, if the previous decision is not conclusive, the former question cannot be raised on habeas corpus, for the reason that relator is held upon a commitment which is in the nature of a final judgment. People ex rel. Kuhn v. Protestant Episcopal

House of Mercy, 133 N. Y. 207, 30 N. E. 853. The point is well taken, unless there was total lack of jurisdiction, either of the person of defendant or of the offense charged, or want of power to pronounce judgment after conviction. It is not enough that such power may have been erroneously exercised. People ex rel. Scharff v. Frost, 198 N. Y. 110, 91 N. E. 376. The jurisdiction of the person of defendant is not in question. The statute defining what shall constitute disorderly conduct tending to a breach of the peace in the city and county of New York specifies several things which shall be deemed offenses thereunder if committed in any thoroughfare or public place therein. Consolidation Act (Laws 1882, c. 410, § 1458); Greater New York Charter (Laws 1901, c. 466, § 1610). One of these offenses is thus described:

"Every common prostitute or nightwalker loitering or being in any thoroughfare or public place for the purpose of prostitution or solicitation, to the annoyance of the inhabitants or passers-by."

That magistrates have jurisdiction to try persons charged with disorderly conduct that tends to a breach of the peace as therein defined seems to be clear. Laws 1882, c. 410, § 1461; Greater New York Charter, § 707; People ex rel. Frank v. Davis, 80 App. Div. 448, 80 N. Y. Supp. 872; People ex rel. Smith v. Van De Carr, 86 App. Div. 9, 83 N. Y. Supp. 245. The record shows that this is the offense with which the relator was charged, for which she was tried, and of which she was convicted. It is not open to criticism for indefiniteness in this respect. People ex rel. Clark v. Keeper, 176 N. Y. 465, 68 N. E. 884. May we inquire in this proceeding whether the magistrate had jurisdiction to impose the sentence which he did? If after conviction such sentence could not under any circumstances have been pronounced, we may. People ex rel. Tweed v. Liscomb, 60 N. Y. 559, 19 Am. Rep. 211. If under certain circumstances such sentence might be proper, but it was erroneously decided in this case that it should be imposed, we may not. People ex rel. Woolf v. Jacobs, 66 N. Y. 8; People ex rel. Scharff v. Frost, supra. To state the case concretely, appellant contends that under no circumstances may a person guilty of the offense of which she stands convicted be sentenced to confinement in the Bedford Reformatory for Women. If that is so, then she is entitled to relief in this proceeding; otherwise not.

Prior to 1905 it may be conceded that she could not have been. People ex rel. Frank v. Davis, supra; People ex rel. Clark v. Keeper, supra. In that year a new section was added to the Greater New York Charter, known as section 707a (Laws 1905, c. 610), which provided as follows:

"Whenever a woman between the ages of sixteen and thirty is convicted in the city of New York of habitual drunkenness, of being a common prostitute, of soliciting on public streets or places for purposes of prostitution, of frequenting disorderly houses or houses of prostitution, or of vagrancy under subdivisions three or four of section eight hundred and eighty-seven of the Code of Criminal Procedure, she may be committed to the State Reformatory for Women at Bedford, pursuant to the provisions of section one hundred and forty-six of the state charities law, to be there confined subject to the provisions of such law and of any other statute relating to such reformatory."

Section 146 of the state charities law (Laws 1896, c. 546) provides, among other things, that:

"The term of such sentence and commitment shall be three years, but such female may be sooner discharged therefrom by the board of managers."

In the act amending the charter 5 offenses are referred to. One of these is "soliciting on public streets or places for purposes of prostitution." Was this the offense described in the section of the consolidation act above referred to, and was it the intention of the Legislature by such amendment to prescribe a punishment for that offense? It is true that the generic term "disorderly conduct tending to a breach of the peace" is not used therein, followed by a specification of offenses grouped thereunder, as it is in the section of the consolidation act. But the similarity of language of these sections, so far as they relate to soliciting for purposes of prostitution, clearly indicates that the same offense was intended in each. In the consolidation act the words employed are "loitering or being in any thoroughfare or public place for purposes of prostitution or solicitation"; while those in the charter provision are "soliciting in public streets or places for purposes of prostitution." Short of identity of language, the intent to refer to the same course of conduct could hardly be more forcibly expressed. It is apparent that the charter section does not apply to all of the offenses specifically described in the consolidation act under the generic term "disorderly conduct." One of these is "suffering an unmuzzled, ferocious or vicious dog to be at large"; another relates to "threatening, abusive, or insulting behavior." These offenses might be committed by either sex, but the second offense specified therein is one which can be committed by women exclusively. The entire charter provision is limited in its application to women, and those of a particular class. The Legislature must have intended by this new provision to refer to some existing evil, and counsel for the appellant has not suggested, nor have I been able to find, any other statutory definition of an offense to which these words of the act in question could so clearly apply as to the one referred to and contained in the New York consolidation act. It is true that the offenses specified in section 1458 of the consolidation act, including this particular offense, were already punishable under provisions of other existing statutes. Consolidation Act (Laws 1882, c. 410, §§ 1461, 1562); Greater New York Charter (Laws 1901, c. 466, § 707); People ex rel. Frank v. Davis, supra. This alone would not prevent the passing of an act providing for other or further punishment. Again, this amendatory act (section 707a of the charter) is reformatory rather than penal in its character. It is limited to a class of women who may be deemed unfortunate rather than criminal, and of that class there is a further limitation dependent upon age. It may well be that the Legislature presumed that between the ages of 16 and 30 there was hope that women guilty of the offense there specified might be reformed and restored to a useful position in society, while beyond that age the prospects of beneficent results were so remote that it deemed it to be better to leave them to be dealt with as criminals rather than as unfortunates. The history of reformatory legislation for women from its beginning in 1881, as continued and extended by

various amendments and new enactments until it found final lodgement in the recent consolidation of the statutes, is interesting and instructive. See Laws 1881, c. 187; Laws 1887, c. 17; Laws 1890, c. 238; Laws 1892, c. 704; Laws 1896, c. 546, §§ 10, 153; Laws 1909, c. 57; Consol. Laws, c. 55, § 226; People ex rel. Duntz v. Coon, 67 Hun, 523, 22 N. Y. Supp. 865. The chronology of this legislation is also suggestive. In 1903 this court had decided, and the Court of Appeals had intimated, that under the statutes then existing a common prostitute convicted of loitering or being in any thoroughfare or public place for purposes of prostitution or solicitation in the city of New York could not be committed to the State Reformatory for Women at Bedford. People ex rel. Frank v. Davis, supra; People ex rel. Clark v. Keeper, supra. Shortly thereafter, and in 1905, this act was passed. The necessity which the courts had pointed out of further legislation to aid in the effort to reform rather than punish unfortunate women concerning whom there might still be ground for hope was heeded by the lawmaking power. This statute was the result. That relator was a common prostitute, and between the ages of 16 and 30, she admitted. We conclude, therefore, that the act in question did confer upon the magistrate the right to impose the sentence which he did.

But appellant contends that, if such act is applicable, it is unconstitutional because it violates article 1, § 6, of the state Constitution, to the effect that no person shall be deprived of liberty without due process of law, or article 1, § 1, thereof, that no member of the state shall be deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers. Appellant's whole argument upon this branch of the case is made to depend upon the proposition that the Legislature cannot pass an act which may result in persons being restrained of liberty for a period not to exceed three years, except after trial by a common-law jury. There is no claim that the character of the offense is such that it is not within the power of the Legislature to commit to police magistrates the power to try persons accused of the same without a jury. This particular offense has been characterized as one which did not reach to the importance of a misdemeanor, either under the statute or at common law. People ex rel. Frank v. Davis, supra. But the people of the state have expressly declared that personal liberty is not endangered in violation of the constitutional provision above referred to by permitting even misdemeanors to be tried without a jury. Const. art. 6, § 23; People ex rel. Comaford v. Dutcher, 83 N. Y. 240; People ex rel. Cosgriff v. Craig, 195 N. Y. 190, 88 N. E. 38. It may be that in a sense one of the elements which tends to characterize the degree of crime is the punishment prescribed therefor. There may be a limit upon the power of the Legislature to prescribe punishment which is not in some degree commensurate with the gravity of the offense. People ex rel. Cosgriff v. Craig, supra; Weems v. United States, 217 U. S. 349, 30 Sup. Ct. 544, 54 L. Ed. 793. If such is the fact, this statute does not exceed the limit of legislative power. As we have before indicated, its purpose is not wholly penal. The tendency of modern legislation is, so long as there is hope of reformation, to reform as well as to punish offenders. The restraint imposed un-

der this commitment is not necessarily long. If it appears that her release is not incompatible with the welfare of society, the relator may be discharged long before the maximum limit has been reached. The purpose of the act is benign rather than drastic. Laws 1896, c. 546, §§ 140, 141, 142, 146, 151, 152; Laws 1909, c. 57; Consol. Laws, c. 55, §§ 220, 221, 222, 226, 232, 233. Legislation of a similar reformatory character, and providing for equally long periods of restraint, has been sustained. People v. Adams, 176 N. Y. 351, 68 N. E. 636, 63 L. R. A. 406, 98 Am. St. Rep. 675; People v. Madden, 120 App. Div. 338, 105 N. Y. Supp. 554.

But we think, also, that this legislation may be viewed as a wise exercise of the police power in the interest of the public health and morals. Duffy v. People, 6 Hill, 75; People v. McCarthy, 45 How. Prac. 97; Steinert v. Sobey, 14 App. Div. 505, 44 N. Y. Supp. 146. The true method of dealing with the social evil has provoked much discussion, and led to the expression of widely divergent opinions. But, though differences of opinion may exist as to the remedy, we think none can exist as to the fact that to permit common prostitutes to solicit upon the public streets, unrestrained and without supervision, may seriously affect both public health and public morals. Mere temporary restraint in a penal institution for a brief period accomplishes little in the way of protection. That legislation which has for its object not only the cure of physical disease, but moral reformation, is wholesome in its character, and the courts should be reluctant to thwart or impede its efficiency.

The order appealed from should be affirmed. All concur.