THE PEOPLE OF THE STATE OF NEW YORK ex rel. DANIEL ANGLEY, Relator, v. WARDEN OF THE PENITENTIARY, Respondent.

Supreme Court, New York County, August 25, 1934.

*Michael I. Winter* and *Aaron Samuelson*, for the relator.

*William Copeland Dodge*, District Attorney [*Erwin N. Schapira*, *Deputy Assistant District Attorney*, and *Angelo A. De Vito* of counsel], for the People.

ROSENMAN, J. This is a proceeding on a writ of habeas corpus. The relator was convicted by confession of the crime of carrying a pistol as a misdemeanor, and was sentenced to the New York City Penitentiary on July 14, 1933, by a judge of the Court of General Sessions. The sentence was that he be imprisoned in the penitentiary, there to be dealt with according to law. The parole commission of the city of New York purported to fix his sentence, in a manner hereinafter set forth, at a period of fifteen months. He has served, up to the date of the writ of habeas corpus herein allowed, a period of one year, one month and eight days. The relator contends that under the provisions of chapter 731 of the Laws of 1934 his sentence should be reduced from fifteen months to ten months, and that his sentence has, therefore, expired. By this writ of habeas corpus he seeks to determine the illegality of the acts of the warden in keeping him in confinement. The facts of the case are conceded to be as above stated, and the sole question presented is whether or not the relator is now entitled to his release from the penitentiary by reason of the provisions of chapter 731 of the Laws of 1934. That chapter amends subdivision 4 of section 230 of the Correction Law. The material portion here involved reads as follows: " Every prisoner received in a state prison or penitentiary on or after July first, nineteen hundred thirty-two, under either a definite or indeterminate sentence, may earn compensation not to exceed ten days for each month of his minimum term in the case of an indeterminate sentence, or on the term as imposed by the court in the case of a definite sentence. Every person received in a state prison or penitentiary before July first, nineteen hundred thirty-two, under either a definite or indeterminate sentence, may earn compensation not to exceed ten days for each month of his minimum term in the case of an indeterminate sentence, or on the term as imposed by the court in case of a definite sentence provided that by other provisions of law, such prisoner is not entitled to compensation equal to, or in excess of ten days per month of his minimum sentence, or on the term as imposed by the court in the case of a definite sentence."

Chapter 579 of the Laws of 1915, as amended by chapter 287 of the Laws of 1916 and chapter 242 of the Laws of 1919, known as the Parole Commission Law, is the statute which governs the admission and release of persons sentenced to the New York City Pen-

itentiary. This chapter authorized the governing board in any city of the first class, having a department of correction exercising jurisdiction over a workhouse, a penitentiary, and a reformatory, to establish a parole commission to possess the powers and duties specified in said chapter. Pursuant to this authorization, the city of New York did create such a parole commission, which is the body now charged with the enforcement of the law.

The portions of the Parole Commission Law, as amended, which are material to the consideration of the question here involved are as follows:

" § 4. After the creation of a parole commission in any of the said cities as hereinbefore provided, any person convicted of any crime or offense upon conviction for which the court may sentence to a penitentiary, workhouse, city prison, county jail or other institution under the jurisdiction of the department of correction of said city, who shall not be committed in default of payment of a fine imposed, or for failure to furnish surety or sureties upon a conviction of disorderly conduct tending to a breach of the peace or of abandonment, and who is not insane or mentally or physically incapable of being substantially benefited by the correctional and reformatory purposes of any such institution shall, if sentenced to any institution under the jurisdiction of the department of correction in said city, be sentenced and committed to a penitentiary or a workhouse or a reformatory under the jurisdiction of the said department of correction  *  *  *.  The term of imprisonment of any person sentenced to any such penitentiary shall not be fixed or limited by the court in imposing sentence. The term of such imprisonment shall be terminated in the manner prescribed in section five of this act and not otherwise, and shall not exceed three years. The term of imprisonment of any person sentenced to any such workhouse shall be fixed by the court in imposing sentence which term shall be for a definite period and shall not exceed six months.  *  *  *

" § 5. The parole commission shall have power to parole, conditionally release, discharge, retake or reimprison without reference to the committing magistrate or judge, except as provided in section three of this act, any inmate of any workhouse or reformatory under the jurisdiction of the department of correction in said city, committed thereto under an indeterminate sentence; and to parole, conditionally release, discharge, retake or reimprison any inmate of any penitentiary under the jurisdiction of a department of correction in said cities, committed thereto under an indeterminate sentence, provided the judge or court who made such commitment to such penitentiary or any successor thereof shall, upon recom-

mendation of the parole commission created in pursuance of this act, approve in writing such parole, conditional release or discharge of such inmate. The said commission shall have power to make all necessary rules and regulations not inconsistent with the laws of the state, prescribing the conditions under which eligibility for parole may be determined and under which inmates may be paroled, conditionally released, discharged, retaken and reimprisoned. The said commission and each and every member thereof shall have full power to compel the attendance of witnesses; to administer oaths; to examine such persons as may be necessary or expedient; to investigate or cause to be investigated the record, health, ability and character previous to commitment and during imprisonment of each inmate committed under an indeterminate sentence to any penitentiary, workhouse, or reformatory of the department of correction in said city. * * *

" § 9. Nothing in this act contained shall be deemed to affect or impair in any manner any provision of the penal laws or of the code of criminal procedure which relates to the sentence, commitment, parole, discharge or reimprisonment of any person committed to any institution other than those institutions specified in this act, the intent of this act being to empower magistrates and courts of or in cities of the first class, in the circumstances hereinbefore specified, to commit persons under indeterminate sentence to penitentiaries, reformatories and workhouses and to extend the reformatory and correctional functions of each and all of such institutions."

Pursuant to the authority conferred by the provisions of section 5 hereinabove quoted, the parole commission adopted certain rules and regulations, the material ones of which read as follows:

" (a) When an inmate is committed to the workhouse under the jurisdiction of the department of correction, the commission shall fix a period of confinement in years, months or days.

" (b) When an inmate is committed to the New York City Penitentiary or Reformatory, the commission shall allot a number of marks to each inmate, the date of parole of such inmate being dependent upon his or her conduct and industry and the consequent rate at which he or she earns the marks allotted.

" (c) The case of each individual who has either earned the number of merit marks required for consideration, or who shall have served the fixed time allotted by the commission, shall come up at a meeting of the Parole Commission during the month preceding the date on which such marks shall have been earned. The commission shall consider, in addition to the earning of the number · of merit marks or the serving of the fixed sentence, the resident physician's certificate stating the condition of health of inmate,

and also a reasonable prospect of work and a suitable home being provided for the inmate upon his or her release." (Rules of Parole Comm. of City of N. Y., 1931.)

It is conceded that pursuant to these rules the commission allotted this relator a certain number of marks, which he would have earned within the period of fifteen months. Pursuant to the practice of the parole commission, the allotment of the number of marks was approved in writing by the committing judge. It is urged by the relator that the allotment of marks is purely a bookkeeping entry, and that in effect and in practice the number of marks determines the actual number of days of confinement. The relator argues that, upon the entrance of this relator into the penitentiary, or soon thereafter, the parole commission determined that the relator was to remain in confinement for a period of fifteen months, by reason of the facts that it assigned to him the number of marks which would require fifteen months to earn, and that the judge approved this number.

The relator contends that, although the sentence provided for imprisonment in the New York City Penitentiary, " there to be dealt with according to law," the acts of the parole commission and the approval of the judge fixing the number of marks, and thereby the minimum period of confinement pursuant to the commission's rules, in effect established a minimum term; that the maximum term was three years under the provisions of section 4; that, therefore, the relator was confined for an indeterminate sentence within the meaning of chapter 731 of the Laws of 1934, and that he is entitled accordingly to the benefits of that chapter.

The term " indeterminate sentence " is defined only in the Correction Law by subdivision 1 of section 230 thereof. This subdivision reads as follows: "A sentence to imprisonment in a state prison for a definite fixed period of time is a definite sentence. A sentence to imprisonment in a state prison having minimum and maximum limits fixed by the court or the governor is an indeterminate sentence."

Chapter 731 of the Laws of 1934 must refer to this kind of indeterminate sentence, in as much as it is contained within the same section as the definition itself. The questions here are whether the provisions of chapter 731 of the Laws of 1934 are at all applicable, and, if so, whether the relator's sentence is an indeterminate one having a minimum and maximum fixed " by the court or the governor." In other words, do the provisions of chapter 731 of the Laws of 1934 apply to the New York City Penitentiary where sentences are imposed pursuant to the provisions of the Parole Commission Law?

I am of opinion that the sentence of this relator is not an indeterminate one within the definition, and that the provisions of chapter 731 of the Laws of 1934 do not apply to this penitentiary.

The Parole Commission Law specifically provides (section 4) that " the term of imprisonment of any person sentenced to any such penitentiary shall not be fixed or limited by the court in imposing sentence. The term of such imprisonment shall be terminated in the manner prescribed in section five of this act and not otherwise, and shall not exceed three years." This prohibition against fixing the term of imprisonment in the penitentiary is emphasized by the fact that the next sentence following provides specifically that the term of imprisonment of any person sentenced to the workhouse " shall be fixed by the court in imposing sentence."

The authority to fix the date of conditional release or parole or discharge of inmates sentenced under the act is placed in the parole commission itself. So far as conditional release, parole or discharge from a workhouse or a reformatory is concerned, the parole commission has sole and exclusive authority. So far as parole, conditional release or discharge of an inmate of a penitentiary is concerned, this authority is limited only by the provision that the judge or court who made the commitment or his successor shall approve it in writing. It is significant that the judge is required to approve the recommendation of the parole commission at the time when the parole commission recommends that such parole, conditional release or discharge of the inmate take place. There is no provision in the statute that such approval of the judge be required in advance, or upon admission or shortly thereafter. This interpretation of the statute is borne out by the fact that the original law (Laws of 1915, chap. 579) provided in section 5 that " the judge who made such commitment to such penitentiary shall * * * approve; " whereas the amendment to the statute made the next year (Laws of 1916, chap. 287) provided that " the judge or court who made such commitment to such penitentiary or any successor thereof shall * * * approve." It was obviously contemplated by the amendment that by the time the parole commission decided to release the prisoner the committing judge might not be in office, and for that reason provision was made that " any successor thereof " might give the required approval.

The rules and the practice which the parole commission has adopted of allotting a number of marks to each inmate may be a convenient method of keeping records of the inmates. If, however, the rules contemplate, or the commission assumes, that the allowance of the number of marks fixes the minimum absolutely and irrevocably, there is no warrant in the statute for this practice.

The policy of the statute is clearly that the conditional release of the prisoner should depend, not only upon the nature of the offense and the prior record of the prisoner, but also upon his conduct within the walls of the penitentiary. If the commission considers the allowance of marks which it makes shortly after the entrance of the inmate as a definite minimum time which cannot be changed irrespective of the subsequent behavior of the inmate within the penitentiary, then the commission is not carrying out the policy of the statute. If, on the other hand, the commission permits the earning of the marks by the inmate to depend upon his " conduct and industry " within the walls of the penitentiary, as provided for in their rule 2B, then they are carrying out the policy of the statute and are exercising the proper functions of a commission charged with the duty of reforming prisoners. In the absence of compelling evidence to the contrary, it must be assumed that the marks are earned by the inmates, not merely by the expiration of days, but by the " conduct and industry " provided for in the rules of the commission. Consequently there can be nothing fixed and definite about the amount of time which the commission decides an inmate committed to the penitentiary must serve. If these marks are considered to fix a definite minimum sentence, they are not authorized by the statute.

Although it appears that the practice has grown up of having the committing judge approve the number of marks allotted shortly after the inmate is received, there is no necessity for this in the statute and, indeed, no justification. The statute requires the approval of the committing judge only for the actual parole, release or discharge, and not for the determination in advance of the approximate time which the inmate is to serve. Nor can the addition of the judge's approval be interpreted to mean that a minimum sentence has been fixed, because section 4 specifically provides that no court may impose a minimum for a person sentenced to the penitentiary.

The discretion as to the length of time which an inmate must serve is vested with the parole commission in penitentiary cases, subject only to two limitations, viz.: (1) That it be not in excess of three years; and (2) that the committing judge or his successor approve. It is true that chapter 579 of the Laws of 1915, as amended, speaks of the sentence as an " indeterminate sentence." Indeed, section 9 of the act specifically states that it is the intention thereof to empower courts to commit persons " under indeterminate sentence " to penitentiaries. By the other provisions of the law, however, it is clear that this cannot mean an indeterminate sentence within the definition of section 230, subdivision 1, of the Correc-

tion Law. Nor indeed can it be assumed that the definition of indeterminate sentence, as the expression is used in chapter 579 of the Laws of 1915, has anything to do with the definition of the same phrase in another chapter, namely, the Correction Law, enacted at a different time. There is no indication in either chapter that the phrase " indeterminate sentence " is to be construed similarly in the two statutes. The sentence, under the Parole Commission Law, is neither definite nor indeterminate. It is a peculiar kind of sentence which is applicable only to a penitentiary under the Parole Commission Law, in which the maximum is three years and in which the minimum is within the absolute discretion of the commission. Vesting this wide discretion with the parole commission has been considered by a great many penologists and students of prison reform as the best method of prison administration and inmate reformation. In somewhat modified form the Legislature of the State of New York passed a bill at its regular session in 1934 making the same policy applicable to the State prisons with respect to certain types of prisoners (Senate Int. No. 1396, Print. No. 1588). Although the bill was vetoed by the Governor, and is, therefore, not the law of the State, it is mentioned as indicative of the fact that the peculiar kind of sentence now applicable to the New York City Penitentiary has, in modified form, been urged for the other penal institutions in the State.

There is ample precedent for holding that an entirely separate system of imprisonment and parole has been created for the New York City Penitentiary different from that in other penitentiaries and prisons. The court in the case of *People ex rel. Rabiner* v. *Warden of City Prison* (209 App. Div. 795, at p. 799), described this statute as follows: " In its original and amended condition alike, this law prescribes a complete, comprehensive and exclusive procedure for (among other things) paroles and conditional discharges of prisoners committed to workhouses, penitentiaries and reformatories in cities of the first class, wherein there is a department of correction having jurisdiction of such institutions. It was intended to apply only to such cities, but as to them it furnished the only regulation for the matters therein included. I do not believe that any subsequent legislative enactments by way of amendment either of the Penal Law or Code of Criminal Procedure could operate as a repeal, modification or restriction of the system created by the Parole Commission Law, unless the intention to make such repeal or changes apply to cities of the first class, as well as to the State at large, was clearly expressed. There is no intention so declared in the amendments of the Code of Criminal Procedure in question."

The language of the court is clearly applicable to the provisions

of the Correction Law also. It was not intended that the new provisions of the Correction Law (Laws of 1934, chap. 731) should operate as a repeal or modification of the system created by this statute. The reason for this distinction as to the New York City Penitentiary is set out by the court in the case of *People ex rel. Kipnis* v. *McCann* (199 App. Div. 30, at p. 38; affd., without opinion, 234 N. Y. 502): " The plain purpose of the Parole Commission Act is to give every person who has been convicted of a crime in cities of the first class, punishable by imprisonment in the places specified in the act, an opportunity to benefit by the disciplinary, correctional and reformatory purposes of the institutions under the jurisdiction of the department of correction, unless the trial court deems the offender mentally or physically incapable of being substantially benefited thereby. The legislation has for its object moral reformation rather than punishment, and it is, therefore, ' wholesome in its character, and the courts should be reluctant to thwart or impede its efficiency.' (*People ex rel. St. Clair* v. *Davis*, 143 App. Div. 579, 587.) "

It has been held that the provisions contained in the Code of Criminal Procedure with reference to the revocation of parole do not apply to this particular penitentiary, and do not *pro tanto* repeal the Parole Commission Law. (*People ex rel. Rabiner* v. *Warden of City Prison, supra.*) It has been held that the provisions of the Penal Law which define the crime of receiving stolen property and fix the sentence therefor, which were enacted after the enactment of the Parole Commission Law, do not serve to repeal or modify *pro tanto* the provisions of the Parole Commission Law, but that it remains as the sole statute governing sentences to the New York City Penitentiary. (*People ex rel. White* v. *Commissioner of Correction*, 198 App. Div. 384, 387.) The court said: " It should be noted that the Parole Commission Law is confined in its operation to cities of the first class, whereas the Penal Law applies to the State at large. The application of the Parole Commission Law depends upon the place to which the offender is sentenced. If the prisoner be committed to an institution under the jurisdiction of the department of correction in a city of the first class, then he is to be sentenced to a penitentiary or a workhouse or a reformatory under the jurisdiction of said department for an indeterminate sentence, not fixing the term, and the imprisonment may not exceed three years. I conclude that in view of the fact that the Parole Commission Law is special in its application to certain localities in the State, and the Penal Law is general in its application to the State at large, there is not such a necessary conflict as works a repeal of the Parole Commission Law as to the offense

of receiving stolen property in the second degree. Both of these acts can be given force and effect. The Penal Law is applicable to the State at large. Except in cities of the first class, it is given full force and scope, leaving untouched the application of the Parole Commission Law to cities of the first class."

In the case of *People ex rel. Stein* v. *McCann* (225 App. Div. 623) it was urged that the provisions of section 2193 of the Penal Law were applicable to the New York City Penitentiary as to the allowance of time spent in detention jails. The court held, however, that the provisions of the Penal Law did not apply to a sentence under the Parole Commission Law. This decision must be deemed to have overruled a contrary determination at Special Term in *People ex rel. Maloney* v. *Warden of New York County Penitentiary* (132 Misc. 63).

The conclusion seems inevitable that the parole commission is vested with complete jurisdiction over the discharge of inmates sentenced to the penitentiary, subject only to the restrictions above mentioned. It is not necessary that it be given any further authority under chapter 731 of the Laws of 1934. If the commission believes that the conduct and industry of an inmate entitles him to parole, it has the power to release him on parole subject to the approval of the court. This is succinctly stated by the Appellate Division of this department in the case of *People ex rel. Liebowitz* v. *Warden* (186 App. Div. 730, 732), wherein it pointed out that under the Parole Commission Law " there is no limit to the minimum; that rests entirely in the discretion of the Commissioners." The relator, therefore, is not entitled to the privileges extended by chapter 731 of the Laws of 1934. The date of his release continues to remain within the discretion of the parole commission, with the approval of the judge as heretofore.

The commissioner of correction has appeared before me in support of the contention of the relator. His argument was addressed to the question of a sound prison policy, urging that the writ be sustained on that ground. The court must decide this question, however, on the statutes before him and not on the considerations urged by the commissioner. Nevertheless, the court is of opinion that the parole commission under its present powers is authorized to give adequate recognition to good behavior in considering the cases before it, if it desire to do so and if the committing judge approves.

Writ is dismissed and the prisoner is remanded.

Supplementary opinion, August 27, 1934.

All doubt as to whether the provisions of chapter 731 of the Laws of 1934 are applicable to inmates of the New York City Peniten-

tiary, and as to whether the Legislature intended them to be applicable, are set at rest by the provisions of section 249 of the Correction Law and the decision in *People ex rel. Pinchback* v. *Warden of Penitentiary* (184 App. Div. 777).