THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* PAUL GLOWACKI, Appellant.

County Court, Cayuga County, June 27, 1940.

*James F. Quigley* and *John LoPinto*, for the appellant.

*Theodore M. Coburn, District Attorney* [*Gerald S. Saperstein, Assistant District Attorney,* of counsel], for the respondent.

UNDERWOOD, J. This is an appeal from a conviction and commitment of a sixteen-year-old boy, after plea of guilty under a charge of petit larceny. The commitment, issued by the Recorder's Court of the City of Auburn, directed that the defendant be imprisoned in the New York State Vocational Institution, at Coxsackie, " there to be dealt with according to law."

The appellant claims that the commitment is void for indefiniteness, and also that, if not void, it is excessive in that no limit within one year is stated. Counsel have not furnished the court with any citations of decisions rendered on the point, in so far as the institution at Coxsackie is concerned. It seems necessary, therefore, to examine the legislation creating the institution and other statutes authorizing commitments other than to jail or prison.

Article 13-A of the Correction Law deals with the institution. It was created by chapter 528 of the Laws of 1932, and control thereof was given to the State Department of Correction. The act transferred the activities of the New York House of Refuge, located at Randall's Island, to the new institution, making the latter a successor body in law. The institution is, in clear and unmistakable terms, a State institution, taking over the activities of the House of Refuge and offering a State-wide service, rather than one of a municipal character. It is housed at Coxsackie and is used for the " care, treatment, training and education " (Correction

Law, § 331) of male persons over sixteen years of age, but less than nineteen years of age, who have been found to be disorderly persons, or wayward minors, or vagrants, or found guilty of any other offenses or crimes, including misdemeanors or felonies, other than crimes punishable by death or life imprisonment. The powers and duties of its superintendent are stated, mainly by reference to those of superintendents of State reformatories, as declared and provided for in article 12 of the Correction Law. Section 343 of that act states: " Any person who shall be convicted of an offense punishable by imprisonment in the New York House of Refuge, or the New York State Vocational Institution, shall be imprisoned according to the statutes relating thereto, the term of such imprisonment of any person convicted and sentenced for a felony shall be terminated as provided by law, but such imprisonment shall not exceed the maximum term provided by law for the offense for which said person was convicted and sentenced. In the cases of persons convicted and sentenced for any other offense or of a misdemeanor the term of imprisonment shall be for a period of not to exceed three years."

Section 338 of the act provides: " The Commissioner of Correction, in accordance with this act, shall adopt such rules and regulations as he shall deem necessary, not inconsistent with the law, to provide for the parole and discharge of persons legally committed."

Section 344 of the act provides for the transfer of prisoners, for stated reasons, to other institutions in the Department of Correction and states: " A person so transferred shall continue to be confined as under an indeterminate sentence, commencing with his term of imprisonment in the institution to which he was originally committed, and may be released on parole, or absolutely discharged as any other person confined under an indeterminate sentence."

The reasons for transfer, including commitment when at least nineteen years of age, prior conviction of felony and incorrigibility seriously detrimental to the institution, all indicate a legislative desire to maintain the institution as one for youthful offenders, offering a place separate and apart from mature criminals or those experienced in crime or of a vicious or at least disturbing nature and disposition. The transfer provisions offer the superintendent an opportunity to clear out the rotten apples, leaving the sound ones in the barrel.

Since the act indicates the legislative desire to extend, in a State-wide manner, the functions of the New York House of Refuge, it seems advisable to explore that angle of the matter, at the outset. The New York House of Refuge was founded over one

hundred years ago, under an act passed March 29, 1824. Its charter declared its object to be " the reformation of juvenile delinquents." At that time children of tender years could be found guilty of crimes, such as petit larceny. Today the child under sixteen, though termed a juvenile delinquent, cannot be convicted of the offense or crime. His act is deemed an act of juvenile delinquency, not a crime, and various Children's Court acts now testify to the change in the point of view with respect to children and their responsibilities. The act creating the House of Refuge directed that the institution, through its managers, should retain in its custody male persons convicted of criminal offenses or committed as vagrants until their majority. Female children could be detained until the age of eighteen. In 1868, in a proceeding under writ of habeas corpus, a boy under sixteen was ordered discharged from custody. His offense was petit larceny. He had been committed to the House of Refuge " there to be dealt with according to law." The language in the commitment under present consideration, therefore, has historical foundation. The justice who made the order of discharge had held that, inasmuch as the Revised Statutes prescribed, as a limit of punishment for petit larceny, an imprisonment of six months, the commitment made was indefinite in regard to the term of imprisonment and illegal. In reviewing the order of discharge, the court stated, in part: " Strictly speaking, confinement in the House of Refuge does not partake of the degradation or physical suffering to which persons are subject, usually, in prisons. Its discipline is reformatory, with the view of saving persons, during the susceptibility of tender years, from total profligacy, and restoring them to society in a condition no longer dangerous to it. * * * The sentence of the law upon the criminal is not imposed. Instead thereof he is committed to the care and custody of this charitable institution during minority, to be instructed in useful knowledge. No court can increase the term of detention, or shorten it. The act incorporating the society fixes it, once for all." The order was, therefore, reversed and the boy remanded to the custody of the institution. (*People ex rel. Society, etc.*, v. *Degnen*, 54 Barb. 105, 110, 111.)

In 1894 an appeal was heard from an order dismissing a writ of habeas corpus. A boy of thirteen years of age had been convicted of petit larceny and committed to the State Industrial School, under the custody of the board of managers thereof, until discharged by due course of law. This institution, located in Western New York, had been established to receive all male persons

under eighteen years of age who should have been legally committed under a conviction for any criminal offense by any court having authority to make such commitment. The managers were empowered to place their charges in employment and to give them instruction. Under the act creating the school, their charge and power over such children was, in the case of males, not to extend beyond the age of twenty-one years. The court held the commitment in accordance with law and not void for indefiniteness, saying, in part: "The institution is for the reformation of delinquents and had its origin in and is maintained in a charitable spirit towards delinquents. By adjudication made by the committing magistrate, the delinquent escapes from the penalty of the law, and avoids the penalty prescribed for the crime he had committed, by being sent to the charitable institution to be reformed."

In its decision the court referred to section 15 of the Penal Code (now section 1937 of the Penal Law), providing that a person convicted of a crime declared to be a misdemeanor, for which no other punishment is specially prescribed by that act, or by any other statutory provision in force at the time of conviction and sentence, is punishable by imprisonment in a penitentiary or county jail, for not more than one year, or by a fine of $500, or by both. The court held that in this boy's case the statutory provisions of the act creating the State school were in force, authorizing commitment, and that, therefore, section 15 of the Penal Code had no application. The appeal was dismissed. (*People ex rel. Zeese* v. *Masten*, 29 N. Y. Supp. 891, 893.)

The appellant has cited *People ex rel. Johnson* v. *Webster* (36 N. Y. Supp. 995) as authority that a Court of Special Sessions has no authority to impose an indefinite sentence. In that case, decided in 1895, a commitment to a jail for a period not exceeding 180 days was held void. The court said, in part: "The term of imprisonment, however, must be definitely fixed and declared by the judgment. It cannot lawfully be left to the management of the jail or penitentiary to determine the length of time which, within a certain period, the imprisonment shall continue." The decision is sound, in so far as it relates to imprisonment in a jail, but has no application in connection with a commitment under the statutory provisions governing the vocational institution. Indeed, the fact that no jailor or warden is given power to parole is significant, in view of the provisions made for parole supervision in article 13-A and other articles of the Correction Law.

Article 7-A of the Correction Law deals with a parole system in cities of the first class, authorizes creation of a Parole Commission, defines the Commission's duties and powers and declares the legislative intent as being to authorize magistrates and courts of such

cities to commit, under indeterminate sentences to penitentiaries, reformatories and workhouses and to extend the reformatory and correctional functions of all such institutions. Section 203 provides that the court, in imposing sentence, shall not fix or limit the term of imprisonment of any person so committed, that the term shall be terminated by the Commission, under procedure outlined for it in section 203, and lastly, that said term shall not exceed three years. The entire article and its scheme seem to have been derived from chapter 579 of the Laws of 1915, as amended. Its purpose is to give persons convicted of certain crimes in the great cities an opportunity to benefit by disciplinary, correctional and reformative methods in the city institutions named, unless the trial court deems the offender incapable of being substantially benefited. Moral reformation rather than punishment is its object. (*People ex rel. Rabiner* v. *Warden*, 209 App. Div. 795; *People* v. *McCann*, 199 id. 30.) These decisions and others, not here cited, brush aside any claim that the legislation is unconstitutional, in so far as it confers on Courts of Special Sessions the power to impose sentences of up to three years for misdemeanors or because of any apparent discrimination, in the sentence, between persons convicted of misdemeanor in cities of the first class and those convicted of similar offenses in other parts of the State. Under this act, New York city courts may and do commit misdemeanants, as well as those convicted of first felony, subject to the rules and regulations of the City Reformatory or the City Penitentiary. The sentence is indefinite. It is neither a determinate nor an indeterminate sentence, within the meaning of section 230 of the Correction Law. It is a peculiar type of commitment, applicable under article 7-A. (*People ex rel. Angley* v. *Warden*, 153 Misc. 307.) The maximum term for which a misdemeanant can be held is three years. The minimum is within the absolute discretion of the Parole Commission. No power of transfer to State institutions, under jurisdiction of the State Department of Correction, has been given. The operation of the system is city controlled throughout. Nevertheless, certain features of the system appear to have been incorporated in the Vocational Institution Act (Correction Law, art. 13-A), such as the authority there for some parole system and the acceptance of misdemeanants, for whom a term of not to exceed three years has been established.

Under article 12 of the Correction Law, the State Reformatory at Elmira is continued, to be known as the New York State Reformatory. Under section 307 and its successor, section 288, those committed to this State institution are committed subject to its rules and regulations, the term to be ended by the board of managers

or, in late years, the Board of Parole in the Executive Department. Likewise, for many years the law has provided that the term of imprisonment should not exceed the maximum term provided by law for the crime for which the prisoner was committed, except that in the case of misdemeanants the term of imprisonment could not exceed three years. Section 289, derived from section 305, as repealed in 1931, now directs that if through oversight or otherwise a person be sentenced to Elmira Reformatory for any definite period, such sentence shall not, for that reason, be deemed void. The person so sentenced shall be considered entitled to the benefits and subject to the liabilities of the article, as though he had been sentenced or committed for an indefinite period in the manner provided by the Penal Law. Section 2185 of the Penal Law authorizes felons to be committed to the Elmira Reformatory " to be there confined under the provisions of law relating to that reformatory." Section 2195 of the Penal Law provides that when a person shall be sentenced to imprisonment in a reformatory, as prescribed in section 307 of the Prison Law (now section 288 of the Correction Law, above cited), the court imposing sentence shall not fix or limit the duration thereof. These provisions all indicate the legislative intention that Elmira commitments shall be indefinite and that only the Parole Board of the State shall fix the time of release, within, of course, the three-year limit in cases of misdemeanants. Section 2195 of the Penal Law, above cited, was declared constitutional in *People* v. *Madden* (120 App. Div. 338).

The Vocational Institution Act, by section 344, provides for imprisonment in language similar to the Elmira statute. Persons convicted of felony shall be committed under the statute, the term of imprisonment not to exceed the maximum provided by law for such offenses. It is quite apparent that the statute requires an indeterminate or indefinite sentence for felons, the term to be ended by the Commissioner of Correction, under his parole rules. Since transfers from the Vocational Institution are authorized as to misdemeanants, as well as felons, with continuance at Elmira under an indeterminate sentence, it seems clear that the Legislature intended that no specific or definite term, within the three-year limit, should be imposed on misdemeanants committed to the Vocational Institution. The Commissioner, through his parole assistants, and he alone, should have the power to release misdemeanants. The history of the House of Refuge, the limitation as to age, the creation of a parole system and the similarity between this act and the other articles, above mentioned, all show a legislative desire and intention that youths between sixteen and nineteen should be confined and controlled apart from more mature or more

hardened criminals, that they should have the chance to receive training and education, with emphasis on the reformatorial features of such confinement, and that those with day-to-day knowledge of them and in authority over them should be in a position to determine when, in their own best interests as well as in the interest of society, they should be released. Some criminals reform for life, before they have even been convicted. For others, the first sentence is the formal and recorded social noting of a series of disasters. Only those in the institution can tell when release is wise in one case and unwise in another. The sentencing court certainly cannot.

For the foregoing reasons, the appeal is dismissed.